BRORBY, Circuit Judge.
I. INTRODUCTION
Rachel Bauchman, by and through her mother and guardian, Cheryl Bauchman sued her music teacher, Mr. Richard Torgerson, West High School, the Salt Lake City School District and several West High School and School District Administrators, claiming that defendants violated the Establishment, Free Exercise and Free Speech clauses of the United States Constitution and her civil rights under 42 U.S.C. § 1983 (1994), her rights under the Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb (1994), and the Religion and Speech clauses of the Utah Constitution.
The constitutional issues raised in this appeal are issues of acute public interest— issues which evoke diverse opinions and strong emotions. The fact Ms. Bauehman’s claims focus on religious neutrality in public schools only intensifies that interest and. emotion.[1] This is no more true than in Salt Lake City, Utah — a community and state whose unique social and political history reveals a longstanding tension involving the separation of church (“The Church of Jesus Christ of Latter-day Saints” or “Mormon Church”) and state.[2]
Acknowledging this unique history and tension, we have taken particular care in studying Ms. Bauchman’s claims and legal arguments. We take seriously our obligation to uphold the First Amendment of the Constitution, which fundamentally operates to protect minority interests. Our study of the relevant facts and law leads us to affirm the district court’s dismissal of Ms. Bauchman’s complaint and denial of her motion to amend the complaint.
*546 II. BACKGROUND
A. SUMMARY OF FACTS AND ALLEGATIONS
Rachel Bauchman was a sophomore at Salt Lake City’s West High School during the 1994-95 school year. During that same year, Ms. Bauchman auditioned for and was admitted into Mr. Richard Torgerson’s a capella choir class (the “Choir”), an elective course offered for credit.
By way of her original complaint and proposed amended complaint, Ms. Bauchman, who is Jewish, generally alleges Mr. Torger-son “engaged for many years, and continues to engage, in the advocacy, promotion, endorsement and proselytizing of his [Mormon] religious beliefs and practices” during his public school classes and Choir performances. More specifically, she claims (1) as a member of the Choir she was required to perform a preponderance of Christian devotional music; (2) Mr. Torgerson selected songs for the religious messages they conveyed; (3) the Choir was required to perform Christian devotional songs at religious sites dominated by crucifixes and other religious symbols; (4) Mr. Torgerson selected religious sites for Choir performances with the purpose and effect of publicly identifying the Choir with religious institutions; (5) Mr. Tor-gerson berated and ostracized students, like herself, who dissented against his religious advocacy; (6) Mr. Torgerson covertly organized a Choir tour for select Choir members to perform religious songs at religious venues in southern California; and (7) Mr. Torger-son deliberately scheduled the Choir to sing two explicitly Christian devotional songs during West High School’s 1995 graduation. Ms. Bauchman also presents a long list of Mr. Torgerson’s alleged unconstitutional practices as a public school teacher beginning some seventeen years prior to Ms. Bauch-man’s enrollment in his class. She alleges the remaining defendants[3] had knowledge of but consistently failed to take any effective measures to stop Mr. Torgerson from promoting religion in his Choir classes. Ms. Bauchman left West High School and enrolled in a private school for the 1996-97 school year — her senior year. Although she expressed a desire to sing in the Choir during her senior year, she declined an invitation to audition for the 1996-97 Choir. In June 1997, subsequent to oral argument in this appeal, Ms. Bauchman graduated from high school. Hence, she will no longer have occasion to enroll in Salt Lake City public schools.
B. PROCEDURAL HISTORY
Ms. Bauchman filed her complaint requesting declaratory and injunctive relief as well as damages at the end of the 1994-95 school year. Along with the complaint, Ms. Bauch-man filed a Motion for a Temporary Restraining Order and Preliminary Injunction, seeking specifically to enjoin the Choir’s planned performance of two songs at West High School’s 1995 graduation, and more generally, to enjoin the defendants from compelling the Choir to perform or practice Christian devotional songs. Following an emergency hearing, which dealt solely with the evidence and issues pertaining to the graduation songs, the district court denied Ms. Bauchman’s motion for emergency in-junctive relief. The district court deliberately avoided taking evidence on or ruling with regard to Ms. Bauchman’s request for broader, preliminary injunctive relief, noting that such request would require an evaluation of the merits of her constitutional claims as a whole. Ms. Bauchman nevertheless interpreted the district court’s order as a final order denying all requested injunctive relief and filed her first appeal to this court.[4] *547 Bauchman v. West High School, No. 95-4084.
Meanwhile, both Mr. Torgerson and the School District moved to dismiss Ms. Bauch-man’s complaint. They were joined by a group of Choir students and their parents who sought and were granted leave to intervene as defendants. For purposes of considering the motions to dismiss, the .district court permitted Ms. Bauchman to file a “Verified Supplemental Pleading” containing allegations relating to the defendants’ conduct at West High School’s 1995 graduation exercises. After briefing and oral argument, the district court granted defendants’ motions and dismissed the complaint.
Ms. Bauchman then filed a Motion to Alter or Amend Judgment and for Reconsideration of Order Granting Defendants’ Motions to Dismiss pursuant to Fed.R.Civ.P. 59(e). In the alternative, Ms. Bauchman sought leave to amend her complaint and proffered a proposed amended complaint together with eight affidavits. The proposed amended complaint included additional allegations regarding the knowledge and actions of the individual school district defendants, numerous allegations pertaining to Mr. Torgerson’s conduct prior to the 1994-95 school year and, for the first time, allegations that Mr. Torgerson selected religious songs and performance sites for the purpose of promoting religion. The district court denied Ms. Bauchman’s motion for reconsideration, but held her motion to amend in abeyance pending discovery on the issue of whether, during the 1994-95 school year, Mr. Torgerson’s “selection and rehearsal of Christian songs as part of the music class curriculum, and the performance of such songs by the [Choir] at religious venues was primarily for a secular purpose or primarily for the purpose of promoting or proselytizing religion.” Following completion of discovery, Ms. Bauchman renewed her motion for leave to amend, electing to stand on the amended pleading proffered prior to discovery; she did, however, present the district court with numerous affidavits and deposition excerpts to consider in conjunction with the proposed amended complaint. The district court denied Ms. Bauch-man’s renewed motion after full briefing and oral argument.
Ms. Bauchman’s second appeal contests the district court’s orders (1) dismissing her complaint, (2) denying her motion for reconsideration and (3) denying her motion for leave to amend her complaint. Bauchman v. West High School, No. 96-4101. We consolidated Ms. Bauchman’s two appeals for purposes of argument and disposition. Additionally, we permitted The American Jewish Congress to file a brief as amicus curiae in appeal No. 95-4084, and Americans United for Separation of Church and State and People for the American Way, Presbyterian Church (U.S.A.), United Church Board for Homeland Ministries of the United Church of Christ, The American Jewish Committee, Anti-Defamation League, General Conference of Seventh-Day Adventists, and Union of American .Hebrew Congregations to file briefs as amici curiae in appeal No. 96-4101.
In June 1997, subsequent to oral argument, the Defendanb-Intervenors filed a “Suggestion of Mootness.” Mr. Torgerson and the School District joined in this suggestion, which asserts Ms. Bauchman’s graduation from high school renders her claims for injunctive and declaratory relief moot and requests that we dismiss those claims. Mr. Torgerson and the School District further assert Ms. Bauchman’s damage claims under 42 U.S.C. § 1983 should be dismissed as (1) the individual defendants are qualifiedly immune, and (2) Ms. Bauchman has failed to allege sufficient facts to establish supervisory liability against the school district. In response, Ms. Bauchman denies any of her claims are moot and urges this court to retain jurisdiction over all aspects of her appeal, except for her Religious Freedom Restoration Act claims.[5]
*548 III. MOOTNESS AND PENDENT JURISDICTION DETERMINATIONS
A. DISMISSAL OF APPEAL NO. 95-4084
As indicated above, Ms. Bauehman’s first appeal challenges the district court’s denial of her Motion for Temporary Restraining Order and Preliminary Injunction. Notably, however, this court’s injunction pending appeal and subsequent order adopting the district court’s recommendation to dismiss Ms. Bauchman’s contempt petition effectively resolved all issues pertaining to the Choir’s performance of “Friends” and “The Lord Bless You and Keep You” at West High School’s 1995 graduation. After carefully examining the briefs and record in both appeals, we conclude that all issues concerning the merits of Ms. Bauchman’s broader request for a preliminary injunction are subsumed into the issues raised in her second appeal, Bauchman v. West High School, No. 96-4101. We therefore dismiss appeal No. 95-4084 as moot and limit our discussion to the issues raised in appeal No. 96-4101.
B. DISMISSAL OF DECLARATORY AND INJUNCTIVE CLAIMS
This court may only adjudicate live controversies — controversies that exist at all stages of appellate review, not just on the date the lawsuit or appeal is initiated. Fischbach v. New Mexico Activities Ass’n, 38 F.3d 1159, 1160 (10th Cir.1994). We have held that when an individual graduates from school there no longer exists a live controversy necessary to support an action to participate in interscholastic activity. Accordingly, sueh action is deemed moot upon graduation. Id. at 1160. As Ms. Bauchman has now graduated from high school, there can be no reasonable expectation that she could again be subjected to the alleged unconstitutional conduct of Mr. Torgerson or the other Salt Lake City School District defendants. The defendants no longer have the power or opportunity to adversely affect Ms. Bauchman’s constitutional rights. We therefore agree with defendants Ms. Bauehman’s claims for injunctive relief are moot and dismiss her appeal as to those claims. For these same reasons we deny Ms. Bauchman’s Application for an Injunction Pending Appeal filed August 21,1996.
Although the question is a closer one, we further agree with defendants Ms. Bauch-man’s claims for declaratory relief are now moot. Green v. Branson, 108 F.3d 1296 (10th Cir.1997) controls our decision. Since Ms. Bauchman has successfully completed her secondary education, she is no longer subject to the curriculum chosen by or the conduct of Mr. Torgerson or the other school district defendants. The entry of a declaratory judgment in Ms. Bauchman’s favor therefore would have no effect on the defendants’ behavior toward her as a student. It would merely amount to a declaration the defendants had violated her constitutional rights. Thus, as in Green, declaratory relief would be superfluous to the adjudication of Ms. Bauchman’s § 1983 damages claim. Id. at 1299,1300.
Ms. Bauchman’s attempt to salvage her claims for declaratory relief by suggesting both she and her mother, Cheryl Bauchman, “maintain an active legal interest in the education of the younger Bauchman children,” is to no avail. The only rights and interests asserted in the complaint and amended complaint are those personal to Ms. Rachel Bauchman. Her mother is referenced in the pleadings solely as the “parent and guardian” (i.e. representative) of Ms. Rachel Bauchman. Under these circumstances where (1) the parent is not described as a plaintiff, (2) no theories have been advanced to support an individual action by the parent, and (3) the complaint contains no allegations as to other children, we conclude Ms. Rachel- Bauchman is the only plaintiff before the' court. See Adler v. Duval County Sch. Bd., 112 F.3d 1475, 1478 (11th Cir.1997); see also Laurenzo v. Mississippi High Sch. Activities Ass’n, 662 F.2d 1117, 1120-21 (5th Cir.1981). As the law requires that Ms. Bauchman’s legal interest in the outcome of this appeal be greater than the mere satisfaction of a declaration she was wronged, we *549 deem her claims for declaratory relief moot and dismiss her appeal as to those claims.[6]
C. REMAND FOR DISMISSAL OF STATE CONSTITUTIONAL CLAIMS
Ms. Bauchman asserts defendants’ conduct violated her state as well as federal constitutional rights. More specifically, she alleges the defendants’ policies and actions (1) “constitute the enactment of a law respecting the establishment of religion and infringing plaintiffs right of conscience in violation of Article I, Section 4 of the Constitution of Utah,” (2) “have prevented [her] from freely exercising her own religion ... in violation of Article I, Section 4 of the Constitution of Utah,” (8) “deprived [her] of her freedom of speech ... in violation of Article I, Section 15 of the Constitution of Utah,” and (4) “deprived [her] of her rights to a public education free from sectarian control in violation of Article X, Section 1 of the Constitution of Utah.” After disposing of Ms. Bauchman’s federal claims, the district court dismissed Ms. Bauchman's state constitutional claims on the merits, concluding the state constitutional provisions upon which Ms. Bauchman relies “are not self-executing and contain no provisions or mechanism for a court action or remedy.” The district court further ruled Ms. Bauchman’s state law claims were barred by the Utah Governmental Immunity Act, Utah Code Ann., § 63-30-3(1).
The district court considered Ms. Bauchman’s state law claims under the doctrine of pendent jurisdiction. Pendent jurisdiction is exercised on a discretionary basis, keeping in mind considerations of judicial economy, convenience and fairness to the litigants. United Mine Workers v. Gibbs, 383 U.S, 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); see also 28 U.S.C. § 1367(c)(3). The United States Supreme Court has counseled, pendent jurisdiction “need not be exercised in every case in which it is found to exist.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.” Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139. If federal claims are dismissed before trial, leaving only issues of state law, “the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.” Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988); Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139.
The district court dismissed Ms. Bauch-man’s federal claims on the pleadings. We are upholding that decision. The state law questions presented in this appeal concern whether - the Utah Constitution provides a private right of action against government establishment of religion, infringement of freedom of conscience and sectarian control of public schools. Utah courts have never squarely addressed this issue. Accordingly, any exercise of federal jurisdiction over Ms. Bauchman’s state claims seriously implicates principles of comity. Under these circumstances, Carnegie-Mellon University and Gibbs counsel us to leave the development and application of private causes of action under the Utah Constitution to the Utah courts. See Ball v. Renner, 54 F.3d 664, 669 (10th Cir.1995). The beneficial effect of permitting a Utah state' court to determine the private rights of action under the Utah Constitution far outweighs any negative consequences lie., delay) of declining to exercise pendent jurisdiction. We therefore decline *550 to review the merits of Ms. Bauchman’s state law claims. Instead, we conclude the district court abused its discretion by exercising jurisdiction over those claims and remand Ms. Bauchman’s state law claims to the district court with instructions to dismiss without prejudice for want of federal jurisdiction.
IV. DISCUSSION
Having narrowed our adjudication to Ms. Bauehman’s § 1983 claim, we proceed to address the threshold inquiry in the examination of such a claim: whether Ms. Bauchman has sufficiently alleged a violation of her clearly established constitutional rights. Because we hold the facts alleged by Ms. Bauchman cannot be held to state a claim for denial of her constitutional rights under the Free Speech, Free Exercise and Establishment clauses of the First Amendment, we do not further consider whether the various defendants are entitled to immunity. Siegert v. Gilley, 500 U.S. 226, 227, 233, 111 S.Ct. 1789, 1791, 1793-94, 114 L.Ed.2d 277 (1991); see also, Doe v. Bagan, 41 F.3d 571, 577 n. 7 (10th Cir.1994).
A. DISMISSAL OF MS. BAUCHMAN’S ORIGINAL COMPLAINT
The district court dismissed Ms. Bauch-man’s original complaint inter alia because the complaint and supplemental pleading, construed in a light most favorable to Ms. Bauchman, failed to allege sufficient facts to support her Establishment, Free Exercise and Free Speech claims. On appeal, Ms. Bauchman argues her original complaint satisfied liberal federal pleading requirements and adequately stated a cause of action under the federal constitution.
.1. Standard of Review.
It is well established the sufficiency of a complaint to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is a question of law we review de novo.[7] Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir.1995). In conducting such review, we must accept all the well-pleaded facts of the complaint as true and must construe them in the light most favorable to the plaintiff. Id.; Ramirez v. Oklahoma Dep’t of Mental Health, 41 F.3d 584, 586 (10th Cir.1994). Dismissal is appropriate only if the plaintiff can prove no set of facts in support of the claim entitling her to relief. Ramirez, 41 F.3d at 586. However, counsel may not overcome pleading deficiencies with arguments that extend beyond the allegations contained in the complaint. The complaint itself must show Ms. Bauchman is “entitled to relief’ under each claim raised. Fed.R.Civ.P. 8(a)(2).
2. Sufficiency of Allegations to Support Ms. Bauchman’s First Amendment Claims
a. Establishment Clause.
The gravamen of Ms. Bauchman’s complaint is her claim the defendants’ policies and actions violate the Establishment Clause of the First Amendment. The First Amendment states the government “shall make no law respecting an establishment of religion.” This prohibition extends to state government, including the Utah public schools, by operation of the Fourteenth Amendment.
Determining whether Ms. Bauchman has alleged facts sufficient to support her claim that defendants have violated this prohibition is not an easy task, as there is no bright line standard we can apply. The United States Supreme Court repeatedly has recognized there can be no precise Establishment Clause test capable of ready application, and therefore has resisted confining such sensitive analyses to “any single test or criterion.” Lynch v. Donnelly, 465 U.S. 668, 678-79, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984). Moreover, the Supreme Court has never specifically addressed circumstances like those *551 presented here, ie., the constitutionality of a public school teacher’s conduct in selecting course materials with religious content as part of a broader, secular curriculum. To the extent the Supreme Court has attempted to prescribe a general analytic framework within which to evaluate Establishment Clause claims, its efforts have proven ineffective. Indeed, many believe the Court’s modern Establishment Clause jurisprudence is in “hopeless disarray,” Rosenberger v. University of Virginia, 515 U.S. 819, 861, 115 S.Ct. 2510, 2582, 132 L.Ed.2d 700 (1995) (Thomas, J. concurring), and in need of “[s]ubstantial revision.” County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 656, 109 S.Ct. 3086, 3134-35, 106 L.Ed.2d 472 (1989) (Kennedy, J. concurring in part and dissenting in part).
Our attempt to glean an appropriate standard for this case from existing, muddled Establishment Clause precedent begins with Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), which is recognized as the benchmark ease for Establishment Clause analysis. Applying Lemon, government action does not violate the Establishment Clause so long as it (1) has a secular purpose, (2) does not have the principal or primary effect of advancing or inhibiting religion, and (3) does not foster an excessive entanglement. 403 U.S. at 612-13, 91 S.Ct. at 2111-12.
Beginning in the 1980s, however, the Lemon analysis came under vigorous attack by Justices and commentators alike. See, e.g., County of Allegheny, 492 U.S. at 655, 109 S.Ct. at 3134 (Kennedy, J. concurring in part and dissenting in part) (does not advocate or adopt Lemon test as primary guide for resolving difficult Establishment Clause issues); Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 33, 109 S.Ct. 890, 909, 103 L.Ed.2d 1 (1989) (Scalia, J., dissenting) (use of Lemon to deny tax exemption not founded on Constitution, precedent, or history); Edwards v. Aguillard, 482 U.S. 578, 639-40, 107 S.Ct. 2573, 2606-07, 96 L.Ed.2d 510 (1987) (Scalia, J., dissenting) (criticizing inconsistent application of Lemon test); Aguilar v. Felton, 473 U.S. 402, 419, 105 S.Ct. 3232, 3241-42, 87 L.Ed.2d 290 (1985) (Burger, C.J., dissenting) (Lemon test too formalistic); Wallace v. Jaffree, 472 U.S. 38, 112, 105 S.Ct. 2479, 2518-19, 86 L.Ed.2d 29 (1985) (Rehnquist, C.J., dissenting) (Lemon test blurred and indistinct); Lynch, 465 U.S. at 679, 104 S.Ct. at 1362 (Lemon test not overriding criteria); Mueller v. Allen, 463 U.S. 388, 394, 103 S.Ct. 3062, 3066-67, 77 L.Ed.2d 721 (1983) (Lemon test nothing but helpful signpost); Marsh v. Chambers, 463 U.S. 783, 792-95, 103 S.Ct. 3330, 3336-38, 77 L.Ed.2d 1019 (1983) (Court ignored Lemon in favor of historical argument); see also, Stuart W. Bowen, Jr., Is Lemon a Lemon? Crosscurrents in Contemporary Establishment Clause Jurisprudence, 22 St. Mary’s L.J. 129 (1990) (“the Court should clarify its [Establishment Clause] analysis by abandoning Lemon and adopting a test that more accurately reflects the framers’ original understanding of the word ‘establishment’ ”). Acknowledging Lemon’s weaknesses, Justice O’Connor seized the opportunity in Lynch v. Donnelly to draft a concurring opinion encouraging the Court to refine the Lemon analysis to focus more on whether the government is “endorsing” religion. 465 U.S. at 687-94, 104 S.Ct. at 1366-70.
Applying Justice O’Connor’s refined analysis, the government impermissibly endorses religion if its conduct has either (1) the purpose or (2) the effect of conveying a message that “religion or a particular religious belief is favored or preferred.” County of Allegheny, 492 U.S. at 592-93, 109 S.Ct. at 3101; see also Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 763, 115 S.Ct. 2440, 2447, 132 L.Ed.2d 650 (1995) (plurality); Lynch 465 U.S. at 687-94, 104 S.Ct. at 1366-70 (O’Connor, J., concurring). Recent cases suggest the purpose component of the endorsement test should evaluate whether the government’s “actual” purpose is to endorse or disapprove of religion (ie., did the government intend to endorse or disapprove of religion); Edwards, 482 U.S. at 585, 107 S.Ct. at 2578; Jaffree, 472 U.S. at 56, 105 S.Ct. at 2489-90 (adopting Justice O’Connor’s revision of the purpose component from Lynch v. Donnelly). The effect component, on the other hand, should evaluate whether a “reasonable observer,” aware of the history and context of the community in which the con *552 duct occurs, would view the practice as communicating a message of government endorsement or disapproval. Capitol Square, 515 U.S. at 779-81, 115 S.Ct. at 2455 (O’Connor, J., concurring).
Justice O’Connor’s “endorsement test” is now widely accepted as the controlling analytical framework for evaluating Establishment Clause claims. See James M. Lewis & Michael L. Vild, A Controversial Twist of Lemon: The Endorsement Test as the Establishment Clause Standard, 65 Notre Dame L.Rev. 671 (1990). It would be wrong, however, to suggest the Court is unanimous in its adoption of the endorsement test. Moreover, even the Justices who have adopted the endorsement test do not agree on how it should be applied. Id. at 687-88.
For example, although the Court has indicated a failure to satisfy the purpose component of the endorsement test alone is sufficient to invalidate government action, Edwards, 482 U.S. at 585, 107 S.Ct. at 2578; cf., id. at 610, 107 S.Ct. at 2591-92 (Scalia, J., dissenting) (questioning the premise that government action can be invalidated on the basis of motivation alone, without regard to the effect), the Court rarely has decided cases based solely on the' purpose component. See Jaffree, 472 U.S. at 75, 105 S.Ct. at 2499-500 (O’Connor, J. concurring). When it has, the overriding religious purpose of the government action has been obvious, leaving little need to elaborate on the appropriate scope of the purpose inquiry. See Edwards, 482 U.S. at 613, 107 S.Ct. at 2593 (Scalia, J., dissenting) (citations omitted); Lynch, 465 U.S. at 680, 104 S.Ct. at 1362-63 (citations omitted). To the extent the Court has delved into the government’s subjective intent in its evaluation of the actual purpose, such approach has been openly condemned by two members of the present Court— Chief Justice Rehnquist and Justice. Scalia. Edwards, 482 U.S. at 610, 107 S.Ct. at 2591-92 (Rehnquist, C.J, and Scalia, J., dissenting). According to Justice Scalia, who has proposed- eliminating the purpose component altogether, discerning the government’s subjective intent is “almost always an impossible task ... [t]o look for the sole purpose of even a single legislator is probably to look for something that does not exist.” Id. at 636-37, 107 S.Ct. at 2605-06 (emphasis in original). Consequently, despite Sisyphean efforts, application of this component yields unprincipled ’ results. Id. at 636, 107 S.Ct. at 2605; Jaffree, 472 U.S. at 112, 105 S.Ct. at 2518-19 (Rehnquist, J., dissenting).
Having struggled to meaningfully apply the purpose component of the endorsement test to the alleged Establishment Clause violation in this case, we agree it is an unworkable standard that offers no useful guidance to courts, legislators or other government actors who must assess whether government conduct goes against the grain of religious liberty the Establishment Clause is intended to protect. Nevertheless, the uncertainty surrounding the present Court’s position regarding the appropriate scope of the endorsement test and the appropriate Establishment Clause analysis, in general, cautions us to apply both the purpose and effect components of the refined endorsement test, together with the entanglement criterion imposed by Lemon, when evaluating Ms. Bauchman’s Establishment Clause claim.[8] To survive a motion to dismiss, Ms. Bauch- *553 man must allege facts which, accepted as true, suggest a violation of any part of this analysis.
Ms. Bauchman’s factual allegations concerning violation of her Establishment Clause rights fall into three categories: "the performance of religious music, the performance at religious sites, and the public ridicule and harassment she experienced as a result of the defendants’ collective response to her objections. More precisely, Ms. Bauchman first claims she was repeatedly required to practice and publicly perform Christian devotional music with lyrics that sing praise to “Jesus Christ our savior” and “Jesus Christ our Lord,” and that include other devotional references to God. She alleges a preponderance of the religious songs represented the works of contemporary Christian songwriters. Second, Ms. Bauch-man claims Mr. Torgerson selected explicitly Christian religious sites such as the Church of the Madeleine, the First Presbyterian Church and Temple Square for Choir performances. She alleges these sites are dominated by crosses and other religious images. Finally, Ms. Bauchman alleges when she and her parents expressed their opposition to Mr. Torgerson’s selection of songs and performance venues, Mr. Torgerson (1) criticized Ms. Bauchman in front of her classmates, “specifically and by inference”; (2) blamed Ms. Bauchman and her parents for the cancellation of the Choir’s spring tour and rebuffed Ms. Bauchman’s inquiry regarding the “Covert Tour” organized for Christian Choir members “under the guise of creating a Boy Scout Explorer Post”; (3) “directed the Choir class’s attention to the fact that plaintiff is a Jew in such a way as to emphasize that her beliefs deviated from those of the Christian majority’s”; (4) shared a letter he had received from Mr. Bauchman with the father of another Choir member “with the expectation and desire that [the Choir member’s father] would distribute the letter to other parents of students in the Choir Class so as to incite those parents and their children to punish [Ms. Bauchman] and her parents by means of public ridicule and vilification”; and (5) stated he would not change his conduct. Ms. Bauchman alleges Mr. Torger-son “intended to promote hostility toward and ridicule of [Ms. Bauchman] by her fellow students as punishment for her assertion of her constitutional rights or in an attempt to pressure her to abandon those rights,” and as a result of Mr. Torgerson’s actions, she “was subjected to public ridicule and humiliation, manifesting itself, in part, in racial and religious epithets from her fellow students.”
We first consider whether allegations regarding the singing of religious songs at religious sites, alone, state a claim under the criteria we have set forth. Notably, in her original complaint, Ms. Bauchman alleges no facts to expressly indicate the purpose for selecting a majority of religious songs to be sung at religious venues or that the Choir curriculum has the effect on a reasonable observer of advancing or endorsing religious beliefs. Nor does she allege she was required to sing religious songs as part of a religious exercise per se. Rather, Ms. Bauchman simply alleges Mr. Torgerson selected and required her to perform a preponderance of “Christian devotional” songs in places dominated by crosses and other religious symbols. We will not infer an impermissible purpose or effect in the absence of any supporting factual allegations. See Lynch, 465 U.S. at 680, 104 S.Ct. at 1362-63 (district court erroneously inferred from religious nature of creche that city had no secular purpose for display); Mueller v. Allen, 463 U.S. 388, 394-95, 103 S.Ct. 3062, 3066-67, 77 L.Ed.2d 721 (1983) (Court is reluctant to attribute unconstitutional motives to the states). However, we will evaluate whether Ms. Bauchman’s allegations concerning the selection and performance of songs alone suggest religious endorsement or the school’s excessive entanglement with religion.

Endorsement

Vis a Vis Purpose

Notwithstanding existing uncertainty regarding the propriety or scope of this component of the endorsement test, certain principles governing our inquiry into the government’s actual purpose are beyond dispute. Namely, the Constitution does not require that the purpose of every government-sanctioned activity be unrelated to religion. Jaffree, 472 U.S. at 64, 105 S.Ct. at 2493-94; *554 City of Albuquerque v. Browner, 97 F.3d 415, 428 (10th Cir.1996), cert. denied, -U.S. -, 118 S.Ct. 410, 139 L.Ed.2d 314 (1997). Courts have long recognized the historical, social and cultural significance of religion in our lives and in the world, generally. Courts also have recognized that “a variety of motives and purposes are implicated” by government activity in a pluralistic society. Lynch, 465 U.S. at 680, 104 S.Ct. at 1363. Accordingly, there is a legitimate time, manner and place for the discussion of religion in the public classroom. School Dist. of Abington v. Schempp, 374 U.S. 203, 225, 83 S.Ct. 1560, 1573, 10 L.Ed.2d 844 (1963); Florey v. Sioux Falls Sch. Dist. 49-5, 619 F.2d 1311, 1315-16 (8th Cir.1980).
To sustain her Establishment Clause claim, Ms. Bauchman therefore must allege facts indicating the defendants have no “clearly secular purpose” for selecting songs with religious content and requiring the choir to perform in religious venues. See Jaffree, 472 U.S. at 56, 105 S.Ct. at 2489 (conduct violates the Establishment Clause if it is “entirely motivated by a purpose to advance religion”). In the alternative, Ms. Bauchman can allege facts showing that in spite of the existence of a legitimate secular purpose(s), the defendants’ “actual” purpose is to endorse or disapprove of religion. See County of Allegheny, 492 U.S. at 592, 109 S.Ct. at 3100; Edwards, 482 U.S. at 585, 107 S.Ct. at 2578; Jaffree, 472 U.S. at 56, 105 S.Ct. at 2489-90; Lynch, 465 U.S. at 690, 104 S.Ct. at 1368 (O’Connor, J. concurring). Notably, however, we cannot allow Ms. Bauchman to support her claim with allegations focused solely on the religious component of classroom activity, since such approach would inevitably lead to invalidation of the activity under the Establishment Clause. See Lynch, 465 U.S. at 680,104 S.Ct. at 1362. At the same time, our inquiry into the government’s purpose should be “deferential and limited.” Jaffree. 472 U.S. at 74, 105 S.Ct. at 2499 (O’Connor, J., concurring) We should resist attributing unconstitutional motives to the government, particularly where we can discern a plausible secular purpose. See id. at 74-75, 105 S.Ct. at 2499-500; Mueller, 463 U.S. at 394-95, 103 S.Ct. at 3066-67 (1983).
Here, we discern a number of plausible secular purposes for the defendants’ conduct.[9] For example, it is recognized that a significant percentage of serious choral music is based on religious themes or text. See, e.g., Doe v. Duncanville Indep. Sch. Dist., 70 F.3d 402, 407-08 (5th Cir.1995). Any choral curriculum designed to expose students to the full array of vocal music culture therefore can be expected to reflect a significant number of religious songs. Moreover, a vocal music instructor would be expected to select any particular piece of sacred choral music, like any particular piece of secular choral music, in part for its unique qualities useful to teach a variety of vocal music skills (ie., sight reading, intonation, harmonization, expression). Plausible secular reasons also exist for performing school choir concerts in churches and other venues associated with religious institutions.' Such venues often are acoustically superior to high school auditorh ums or gymnasiums, yet still provide adequate seating capacity. Moreover, by performing-in such venues, an instructor can showcase his choir to the general public in an atmosphere conducive to the performance of serious choral music.
Ms. Bauchman does not allege in her complaint that defendants lacked a secular pur *555 pose. Ms. Bauchman further fails to allege any facts indicating (1) West High School’s vocal music curriculum was out of step with traditional public high school vocal music curricula, (2) the acoustics and/or seating at the selected performance venues were unsuitable for the performance and public enjoyment of serious vocal music, or (3) the defendants’ “actual” purpose was otherwise inconsistent with the prevalent secular objectives noted above. Ms. Bauchman’s allegations instead focus solely on (1) the religious component of the Choir’s activities — she was required to practice and perform songs with religious lyrics at sites dominated by crosses and other religious images, and (2) the defendants’ conduct, not in selecting such songs and venues (the challenged activity), but in response to her objections — she was ridiculed for objecting to such songs and performance sites, and defendants inadequately and inappropriately responded to her objections. These allegations are insufficient to support her Establishment Clause claim given the obvious secular purposes for defendants’ conduct. We see no reason to conclude that defendants’ selection of religious songs and religious performance venues serves an impermissible purpose simply because some of those songs and venues, which undisputedly represent only part of the Choir’s repertoire and performance venues, may coincide with religious beliefs different from those of Ms. Bauchman. See Edwards, 482 U.S. at 605, 107 S.Ct. at 2589 (Powell, J., concurring) (emphasizing that a decision respecting the subject matter to be taught in public schools does not violate the Establishment Clause simply because the material to be taught happens to coincide or harmonize with the tenets of some or all religions) (quotations omitted); Bowen v. Kendrick, 487 U.S. 589, 604 n. 8, 108 S.Ct. 2562, 2571 n. 8, 101 L.Ed.2d 520 (1988). Accordingly, Ms. Bauehman’s complaint fails to state an Establishment Clause claim under the purpose component of the endorsement test.

Vis a Vis Effect

To state a claim under this component of the endorsement test, Ms. Bauchman must allege facts indicating the Choir curriculum or Choir activities have a -principle or primary effect of advancing or endorsing religion. United States Supreme Court precedent “plainly contemplate^] that on occasion some advancement of religion will result from governmental action.” Lynch, 465 U.S. at 683, 104 S.Ct. at 1364. However, not every governmental activity that confers a remote, incidental or indirect benefit upon religion is constitutionally invalid. Id. Thus, as noted above, the Constitution does not forbid all mention of religion in public schools. The Establishment Clause prohibits only those school activities which, in the eyes of a reasonable observer, advance or promote religion or a particular religious belief. This is an objective inquiry, not an inquiry into whether particular individuals might be offended by the content or location of the Choir’s performance, or consider such performances to endorse religion. Gaylor, 74 F.3d at 217.
We believe a reasonable observer aware of the purpose, context and history of public education in Salt Lake City, including the historical tension between the government and the Mormon Church, and- the traditional and ubiquitous presence of religious themes in vocal music, would perceive the following with respect to Ms. Bauehman’s factual allegations concerning the Choir curriculum and performance venues: the Choir represents one of Salt Lake City’s public high schools and is comprised of a diverse group of students; many of the Choir’s songs have religious content — content predominately representative of Judeo-Chris-tian beliefs; in contrast to a church choir, this Choir also performs a variety of secular songs; the Choir’s talent is displayed in the diverse array of songs performed and in a number of different public (religious and nonreligious) settings, all of which reflect the community’s culture and heritage. Certainly, any given observer will give more or less meaning to the lyrics of a particular song sung in a particular venue based on that observer’s individual experiences and spiritual beliefs. However, the natural consequences of the Choir’s alleged activities, viewed in context and in their entirety by a reasonable observer, would not be the advancement or endorsement of religion. Ms. Bauchman’s complaint therefore fails to *556 support a claim that the Choir curriculum or Choir activities have a principle or primary effect of endorsing religion. Entanglement
The entanglement analysis typically is applied to circumstances in which the state is involving itself with a recognized religious activity or institution. See Florey, 619 F.2d at 1318. For the reasons discussed above, we have rejected the notion that Ms. Bauch-man’s allegations regarding the Choir’s singing of religious songs in religious venues alone support a claim that defendants’ conduct endorses religion. Instead, we believe a reasonable observer would conclude the selection of religious songs from a body of choral music predominated by songs with religious themes and text, and the selection of public performance venues affiliated with religious institutions, without more, amount to religiously neutral educational choices.[10] Consequently, we perceive no state involvement with recognized religious activity.
To the extent Ms. Bauchman suggests her allegations regarding past Spring Choir tours and a “covert” 1995 Spring tour are sufficient to support a claim of impermissible entanglement, we disagree. Ms. Bauchman fails to allege she participated in any past Spring tours and thus cannot be heard to claim her constitutional rights were violated as a result of any alleged Choir participation in religious services which may have occurred during those tours. Ms. Bauehman’s allegation Mr. Torgerson “covertly organized a new Choir Class tour ... on public school property under the pretense of creating a Boy Scout ‘Explorer Post’ ” lacks any facts to indicate such tour was conducted or actions were taken to involve the Choir in religious activity. In sum, we find no basis in Ms. Bauch-man’s complaint to suggest Defendants’ alleged conduct amounts to unconstitutional entanglement.

Extraneous Allegations

Having determined Ms. Bauchman’s allegations concerning the singing of religious songs at religious sites do not implicate the Establishment Clause, we must next address the relevance, if any, of her remaining allegations that she was subjected to public ridicule and harassment as a result of defendants’ conduct. Certainly, Ms. Bauehman’s allegations she was criticized and retaliated against for opposing the religious content of the Choir curriculum, taken as true, evidence a lack of sensitivity, crudeness and poor judgment unbefitting of high school students, their parents, and especially, public school teachers and administrators. However, such claims do not rise to the level of a constitutional violation. Nor can they be used to breathe constitutional life into otherwise unactionable conduct. The fact that the defendants did not change their behavior in accordance with Ms. Bauchman’s demands and reacted negatively and/or offensively to those demands simply cannot be viewed as support for her claim that the Choir’s performance of religious music at religious venues furthered a religious purpose, advanced or favored religion or a particular religious belief, or otherwise entangled the public school with religion. We reject this “backdoor” attempt to substantiate an otherwise flawed constitutional claim and conclude the district court properly dismissed Ms. Bauchman’s Establishment Clause claim.
b. Free Exercise Clause.
Ms. Bauchman claims defendants violated the Free Exercise Clause by compelling her to participate in religious exercises in a public school setting, against her expressed desires and religious convictions. Her factual allegations in support of this contention can be summarized as follows: Mr. Torgerson repeatedly required Ms. Bauchman, a Jewish student, to practice and publicly perform Christian devotional music containing lyrics referencing praise to Jesus Christ and God at religious sites dominated by crosses and other religious images, as part of the regular, graded, required Choir activities. Ms. Bauchman further alleges when she opposed such activity in the context *557 of the Choir’s Christmas concert series, Mr. Torgerson gave her the. choice of not participating in the singing of songs she found offensive and told her that her nonparticipation would not adversely affect her Choir grade.[11] Relying largely on Lee v. Weisman, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), Ms. Bauchman’s counsel nevertheless concludes that such a choice is “constitutionally infirm”, and proclaims that Ms. Bauch-man’s allegations therefore establish a Free Exercise violation.
To state a claim for relief under the Free Exercise Clause, Ms. Bauchman must allege something more than the fact the song lyrics and performance sites offended her personal religious beliefs. She must allege facts demonstrating the challenged action created a burden on the exercise of her religion. United States v. Lee, 455 U.S. 252, 256-57, 102 S.Ct. 1051, 1054-55, 71 L.Ed.2d 127 (1982). A plaintiff states a claim her exercise of religion is burdened if the challenged action is coercive or compulsory in nature. See Lyng v. Northwest Indian Cemetery Protective Ass’n., 485 U.S. 439, 448-51, 108 S.Ct. 1319, 1324-27, 99 L.Ed.2d 534 (1988); School Dist. of Abington, 374 U.S. at 222, 83 S.Ct. at 1571-72; Messiah Baptist Church v. Jefferson County, 859 F.2d 820, 824 (10th Cir.1988), cert. denied, 490 U.S. 1005, 109 S.Ct. 1638, 104 L.Ed.2d 154 (1989). Therefore, to state a Free Exercise claim, Ms. Bauchman must allege facts showing she was “coerced” into singing songs contrary to her religious beliefs. Messiah Baptist Church, 859 F.2d at 824. This she has failed to do.
On its face, Ms. Bauehman’s complaint states the songs and performances were a required, graded component of Choir participation, but she was given the option of not participating to the extent such participation conflicted with her religious beliefs. Moreover, she was assured her Choir grade would not be affected by any limited participation. We conclude the fact Ms. Bauchman had a choice whether or not to sing songs she believed infringed upon her exercise of religious freedom, with no adverse.impact on her academic record, negates the element of coercion and therefore defeats her Free Exercise claim. See Grove v. Mead School Dist. No. 854, 753 F.2d 1528, 1533 (9th Cir.) (court held no Free Exercise violation where student was given permission to avoid classroom discussion of book The Learning Tree), cert. denied, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985); Florey, 619 F.2d at 1318 (court held no Free Exercise violation where school board expressly provided students may be excused from activities permitted under rules outlining the bounds of permissible school activities on religious holidays), cert. denied, 449 U.S. 987, 101 S.Ct. 409, 66 L.Ed.2d 251 (1980).
The district court correctly concluded Lee v. Weisman fails to support Ms. Bauchman’s Free Exercise claim. In Lee, the Supreme Court rejected the notion that providing a student an option whether to participate in graduation was sufficient to avoid the Establishment Clause problem with graduation prayer. 505 U.S. at 594-95, 112 S.Ct. at 2659-60. The Lee Court did not address state coercion in the Free Exercise context. For Ms. Bauchman to argue it is impermissible to excuse her from participation, but rather she must be allowed to participate in a Choir that only performs songs of the nature she demands, appears to be an attempt to bootstrap her Free Exercise claim with her Establishment Clause - argument. Courts have long recognized that absent an Establishment Clause violation, the existence of a conflict between an individual student’s or her parents’ religious beliefs and a school activity does not necessarily require the prohibition of a school activity. Such conflicts are inevitable. Florey, 619 F.2d at 1318. In other words, while the Free Exercise clause protects, to a degree, an individual’s right to practice her religion within the dictates of her .conscience, it does not convene on an individual the right to dictate a school’s curricula to conform to her religion.
*558 “ ‘[T]he Free Exercise clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government.’” Lyng v. Northwest Indian Cemetery Protective Ass’n, 485 U.S. 439, 451, 108 S.Ct. 1319, 1326, 99 L.Ed.2d 534 (1988) (quoting Sherbert v. Verner, 374 U.S. 398, 412, 83 S.Ct. 1790, 1798, 10 L.Ed.2d 965 (1963) (Douglas, J. concurring)). Accordingly, “public schools are not required to delete from the curriculum all materials that may offend any religious sensibility.” Florey, 619 F.2d at 1318. Having concluded the State of Utah is not coercing Ms. Bauchman to violate her religious beliefs, we reject any invitation to obscure the appropriate scope of her Free Exercise claim by addressing issues of curriculum content. We leave those issues to our analysis of Ms. Bauchman’s Establishment Clause claim, and uphold the district court’s conclusion she failed to state a Free Exercise claim.
e. Freedom of Speech Clause.
Ms. Bauchman relies on the same allegations she asserted in her Free Exercise claim to support her Free Speech claim. In essence, she argues the practice and performance of Christian devotional music at religious sites as part of the regular, graded, Choir curriculum have deprived her of her constitutional right to refrain from speaking.
The First Amendment certainly prohibits the government from compelling speech. See, e.g., Wooley v. Maynard, 430 U.S. 705, 714, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977). Here again, however, a threshold element of Ms. Bauchman’s claim is coercion or compulsion. See id. at 714-15, 97 S.Ct. at 1435-36; Mountain States Legal Foundation v. Costle, 630 F.2d 754, 769-70 (10th Cir.1980), cert. denied, 450 U.S. 1050, 101 S.Ct. 1770, 68 L.Ed.2d 246 (1981). For the same reasons discussed in the context of Ms. Bauchman’s Free Exercise claim, we conclude her complaint fails to allege facts sufficient to show she was coerced or compelled to engage in any Choir activities (practicing or performing songs she found offensive in venues she found offensive) against her will. The district court properly dismissed Ms. Bauchman’s Free Speech claim for having failed to establish a necessary element of the alleged violation.
B. DENIAL OF OPPORTUNITY TO AMEND[12]
The district court concluded the only material difference between Ms. Bauehman’s proposed amended complaint and her original pleadings was a “new” allegation or theory that it was not just the singing of Christian songs in religious venues that violated her constitutional rights, but rather the fact that Mr. Torgerson selected and performed Christian music at religious venues for the specific purpose of promoting religion. In light of this new theory, the. district court deferred ruling on Ms. Bauchman’s motion to amend until the parties had an opportunity to complete limited discovery regarding the purpose of Mr. Torgerson’s alleged unconstitutional conduct. The district court further limited discovery to Mr. Torgerson’s actions during the year Ms. Bauchman was a Choir member, unless Ms. Bauchman could establish a “clear and concise nexus” between Mr. Torgerson’s alleged past conduct and the injuries she claims she incurred in 1994-95.
After considering the parties’ post-discovery evidence and argument pertaining to the motion to amend, the district court rejected Ms. Bauchman’s efforts to resurrect her Free Exercise, Free Speech, Religious Freedom Restoration Act, and State constitutional claims, and reaffirmed its original ruling that “choir singing of religious music does not automatically equate with praying, and that the selection of Christian songs and the singing of Christian music in religious venues does not per se constitute a violation of the Establishment Clause.” As to Ms. Bauch-man’s claim Mr. Torgerson pursued religious rather than secular purposes, the district court ruled that Ms. Bauchman’s allegations and evidence, when judged by a reasonable *559 observer standard, were insufficient to sustain an Establishment Clause claim. According to the district court, any pursuit of Ms. Bauchman’s proposed amended complaint would be futile, as the allegations failed to state an Establishment Cause claim, and the undisputed materials facts would support a dismissal on summary judgment. The district court further concluded Ms. Bauehman’s motion to amend was untimely, since the essential facts upon which she based her proposed amendment were known prior to dismissal of her original complaint.
Ms. Bauchman challenges these rulings, arguing (1) the proposed amended complaint adequately states a cause of action and therefore is not futile; (2) the district court committed plain error by refusing to permit discovery of, or to consider, evidence of Mr. Torgerson’s conduct prior to the 1994-95 school year; (3) the district court improperly applied a summary judgment standard to her motion to amend; and, (4) her motion to amend was timely. We consider Ms. Bauch-man’s arguments in turn.
1. Standard of Review.
To safeguard a plaintiffs opportunity to test her claims on the merits, Rule 15(a) of the Federal Rules of Civil Procedure provides that leave of the court to amend the pleadings should be freely given when justice requires. Fed.R.Civ.P. 15(a). Accordingly, a district court must justify its denial of a motion to amend with reasons such as futility of amendment or undue delay. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); Hom v. Squire, 81 F.3d 969, 973 (10th Cir.1996). We review the district court’s decision that Ms. Bauchman’s motion to amend her complaint was both futile and untimely for abuse of discretion. Hom, 81 F.3d at 973.
2. Futility.
As to the allegations supporting Ms. Bauchman’s Free Exercise and Free Speech claims, we agree with the district court there is no material difference between the two complaints. Consequently, because we hold the district court did not err in dismissing Ms. Bauchman’s Free Exercise and Free Speech claims, we necessarily conclude the district court did not abuse its discretion by denying Ms. Bauchman’s motion to amend. Further analysis beyond our evaluation of the district court’s order dismissing those claims is unnecessary.
As to Ms. Bauehman’s Establishment Clause claim, we note the following material differences between the original and amended complaints: (1) the amended complaint clearly asserts defendants’ conduct was motivated by a religious purpose; (2) the amended complaint contains numerous allegations to support Ms. Bauchman’s claim that Mr. Torgerson has unconstitutionally promoted his religious beliefs in the classroom for over twenty years; and (3) the amended complaint meticulously identifies each individual defendant together with his or her alleged responsibility for Mr. Torgerson’s conduct or curriculum choices. Ms. Bauchman also presented the district court with eight affidavits in support of her amended complaint. Aside from Ms. Bauchman’s affidavit concerning her Choir experiences during the 1994-95 school year and Ms. Deirdre Lynch’s affidavit concerning the events at West High School’s 1995 graduation exercises, the remaining affidavits describe Mr. Torgerson’s alleged conduct as a music teacher during the two decades prior to the 1994-95 school year. Both parties relied on deposition transcripts and exhibits collected during the course of discovery to support their respective arguments regarding the propriety of Ms. Bauchman’s motion to amend. The test is whether the proposed amendments, as supported by the affidavits or other evidence, cure the deficiencies in the original complaint. See, e.g., Mountain View Pharmacy v. Abbott Lab., 630 F.2d 1383, 1386, 1389 (10th Cir.1980) (court of appeals gave plaintiffs benefit of any supporting allegations contained in sworn factual certificate submitted with the amended complaint when evaluating motion for leave to amend).
We first consider the allegations and evidence concerning Mr. Torgerson’s conduct prior to the 1994-95 school year. Relying on Justice O’Connor’s concurring opinion in Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 777-79, 115 S.Ct. 2440, *560 2454-55, 132 L.Ed.2d 650 (1995), Ms. Bauchman asserts Mr. Torgerson’s “pattern of conduct” dating back twenty years is necessary to understand the “pattern, history and context” of the alleged unconstitutional conduct and thus establish that Mr. Torgerson was furthering a religious purpose through his direction of Choir activities in 1994-95. Thus, she argues the district court improperly curtailed discovery to that period of time Ms. Bauchman. was a Choir member. We disagree.
Ms. Bauchman’s allegations regarding Mr. Torgerson’s past conduct are irrelevant to her- Establishment Clause claim for three reasons. First, as previously discussed, the' “actual” purpose component of the endorsement analysis begins by asking whether there is a lack óf a clearly secular purpose, not whether there is any religious purpose present. See Jaffree, 472 U.S. at 56, 105 S.Ct. at 2489-90; Lynch, 465 U.S. at 680-81, 104 S.Ct. at 1362-63. This threshold determination is an objective one, removed from any subjective intent Mr. Torgerson may have. As previously discussed, Ms. Bauchman never alleged the defendants lacked a secular purpose.
Second, while Justice O’Connor noted a reasonable observer evaluating whether government conduct has the effect of endorsing religion “must be deemed aware of the history and context of the community and forum” in which the conduct occurs, she imparted such knowledge to the reasonable observer in the broad sense of community awareness, not in the sense that a reasonable observer would have knowledge of every alleged past constitutional violation of a particular defendant. Capitol Square, 515 U.S. at 776-81, 115 S.Ct. at 2454-55 (O’Connor, J., concurring). There simply is no indication Justice O’Connor intended her statements to condone the use of alleged past violations suffered by nonparties to bootstrap the constitutional claims of a present litigant. Ms. Bauchman has never claimed to be suing in a representative capacity for past Choir members. Her standing to sue therefore is limited to claims related to the infringement of her own constitutional rights while she was a Choir member. Accordingly, the allegations and evidence relevant to Ms. Bauchman’s claims are limited to defendants’ conduct and events during the 1994-95 school year. The district court did' not abuse its discretion by so limiting discovery and its analysis of Ms. Bauchman’s claims.
Finally, any attempt to use allegations regarding Mr. Torgerson’s past conduct to evidence a continual, controlling unexpressed or psychological motive to further a religious purpose by selecting religious songs and religious performance venues oversteps what we believe are pragmatic limits on the nature of our inquiry into the “actual” purpose of the challenged conduct. Put simply, our examination must stop short of an attempt to discern a defendant’s psychological motives vis á vis his past conduct, underlying belief system or religious character. See Westside Community Bd. of Educ. v. Mergens, 496 U.S. 226, 249, 110 S.Ct. 2356, 2371, 110 L.Ed.2d 191 (1990) (plurality) (recognizing distinction 'between “actual” religious purpose and possible religious motives); Jaffree, 472 U.S. at 74, 105 S.Ct. at 2499 (O’Connor, J., concurring) (same). We must focus instead on objectively discernible conduct or communication that is temporally connected to the challenged activity and manifests a subjective intent by the defendant to favor religion or a particular religious belief.
We focus our inquiry on concrete manifestations of intent for a number of reasons. First, it is likely impossible to discern a sole psychological motive for Mr. Torgerson’s conduct, past or present. See Edwards, 482 U.S. at 636-37, 107 S.Ct. at 2605-06 (Scalia, J., dissenting). Additionally, we fear that to impose constitutional liability on curriculum decisions based on psychological motives inferred from a teacher’s past conduct or religious character would be to (1) impermissibly subject religious teachers to a unique disability simply by virtue of their devout status, see Mergens, 496 U.S. at 248, 110 S.Ct. at 2370-71 (O’Connor, J., plurality opinion); Edwards, 482 U.S. at 615, 107 S.Ct. at 2594 (Scalia, J. dissenting) (court does not presume “the sole purpose of a law is to advance religion merely because it is supported strongly by organized religions or by adherents of particular faiths”); (2) render legiti *561 mate public school curricula decisions affecting a diverse array of students vulnerable to protracted litigation initiated by a single, “offended” student, thereby involving the courts in educational policy decisions best left to the states and locally elected school boards, Edwards, 482 U.S. at 605, 107 S.Ct. at 2589 (Powell, J., concurring) (interference with the decisions of local public school authorities is “warranted only when the purpose for their decisions is clearly religious”); (3) discourage school districts from hiring teachers known to have strong religious beliefs; and (4) due to the inherent difficulty of attempting to discern an individual’s unexpressed or psychological motive, exacerbate what is already perceived to be a morass of inconsistent Establishment Clause decisions. The Establishment Clause does not require such results. Instead, an Establishment Clause claim like the one before us must-be supported by allegations of conduct or statements that expressly (without resorting to psychoanalysis) indicate the defendant believed his selection of songs and performance venues would serve a religious purpose — e.g., constitute religious exercises, cause students to become religious, or cause students to adopt particular religious beliefs. Ms. Bauehman’s allegations concerning Mr. Tor-gerson’s past conduct provide no such indication of a religious purpose during the 1994-95 school year.
Next, we evaluate whether the remaining allegations or evidence change our earlier analysis that Ms. Bauchman failed to allege an Establishment Clause violation. Ms. Bauchman’s proposed amended complaint and supplemental materials expand upon and emphasize certain conduct and events related to the allegations in her original complaint (i.e., the performance of religious music, the performance at religious sites, and the public ridicule and harassment she experienced as a result of the defendants’ collective response to her objections.) The specific nature of Ms. Bauchman’s augmented allegations and the evidence pertaining to those allegations are thoroughly addressed in the district court’s Memorandum Decision and Order Denying Leave to Amend. Bauchman v. West High Sch., 1996 WL 407856 (D.Utah May 30, 1996). We can add little to the district court’s analysis. Having carefully reviewed the entire record before the district court, we respect Ms. Bauchman’s individual perception as to the religious purpose and effect of these events and Mr. Torgerson’s conduct, generally. Ultimately, however, we conclude that although Ms. Bauchman’s allegations may support an observation that Mr. Torgerson is a religious man who struggles to expunge his spiritual convictions from his teaching, they fall short of supporting the required elements of an Establishment Clause claim — e.g., Mr. Torgerson actually taught or proselytized his religious beliefs, advocated Christianity in general, condemned or criticized others’ beliefs, conducted or permitted prayer or other religious exercises by or with Choir members.[13]
Apparently based on the district court’s statement that her proposed amended complaint “would be subject to dismissal under a motion for summary judgment,” Ms. Bauchman urges us to conclude the district court improperly applied a.summary judgment standard when considering her motion to amend. The district court’s order, read as a whole, makes clear the court did.not grant summary judgment against Ms. Bauchman. Rather, the district court thoroughly considered Ms. Bauchman’s amended complaint together with any support for her allegations from the affidavits, deposition transcripts and exhibits presented by both parties, and after such review concluded Ms. Bauchman still failed to state a claim under the Establishment Clause. As discussed above, we agree with and uphold that conclusion. The district court went further to conclude the relevant undisputed facts related to defendants’ conduct during the 1994-95 school year would subject Ms. Bauchman’s proposed amended complaint to dismissal on summary judgment as well. This conclusion in and of itself did not convert the district court’s analysis into a ruling on summary judgment. It simply provided an alternative ground for *562 application of the futility doctrine. A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment. See, e.g., AM Int'l Inc. v. Graphic Management Assocs., Inc., 44 F.3d 572, 578 (7th Cir.1995); Wilson v. American Trans Air, Inc., 874 F.2d 386, 392 (7th Cir.1989). Ms. Bauchman’s argument to the contrary is without merit and seems disingenuous, since she herself participated in discovery and presented supporting materials for the court’s consideration.
In sum, we agree with the district court that Ms. Bauchman’s proffered amended complaint and supporting evidence and affidavits fail to cure the deficiencies in her original complaint. As such, the district court did not abuse its discretion by denying Ms. Bauehman’s motion for leave to amend as futile.
3. Timeliness.
The district court cited Ms. Bauchman’s failure to amend prior to a ruling on defendants’ motion to dismiss and her failure to allege any “essential” facts not otherwise known prior to the dismissal of her original complaint as an alternative ground for denying Ms. Bauchman’s motion to amend her complaint. We question the district court’s rationale under -circumstances where, as here, the court deliberately deferred ruling on Ms: Bauchman’s motion to amend pending the completion of additional, limited discovery related to her newly asserted theory that defendants’ conduct was primarily for the purpose of promoting or proselytizing religion. We need not decide this issue, however, in light of our concurrence with the district court’s decision that Ms. Bauchman’s motion to amend was futile. Further discussion of the timeliness of an amended complaint proffered after dismissal and subsequent court-authorized discovery is best left for another day.
V. CONCLUSION
We acknowledge, as has the United States Supreme Court, that jurisprudence in this arena “is of necessity one of line-drawing, of determining at what point a dissenter’s rights of religious freedom are infringed by the State.” Lee v. Weisman, 505 U.S. at 598, 112 S.Ct. at 2661. The task of distinguishing between real constitutional threat and “ ‘mere shadow ” is a difficult one, id. (quoting School Dist. of Abington v. Schempp, 374 U.S. 203, 308, 83 S.Ct. 1560, 1616, 10 L.Ed.2d 844 (1963) (Goldberg, J., concurring)), and is perhaps more appropriately undertaken on summary judgment or after trial. However, for the reasons stated above, we conclude Ms. Bauchman has failed to demonstrate a real constitutional threat by way of her complaint or proposed amended complaint. We therefore AFFIRM the district court’s dismissal of Ms. Bauchman’s § 1983 claims. We also AFFIRM the district court’s decision denying Ms. Bauchman leave to amend her complaint. We REMAND Ms. Baueh-man’s state constitutional claims to the district court, with instructions to dismiss those claims without prejudice for lack of federal subject matter jurisdiction. Finally, we DISMISS Ms. Bauchman’s claims for injunctive and declaratory relief as moot.

. As the United States Supreme Court has recognized:
The public school is at once the symbol of our democracy and the most pervasive means for promoting our common destiny. In no activity of the State is it more vital to keep out divisive forces than in its schools, to avoid confusing, not to say fusing, what the Constitution sought to keep strictly apart.
Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203, 231, 68 S.Ct. 461, 475, 92 L.Ed. 649 (1948) (Frankfurter, J., concurring).

. For an excellent discussion of this unique history see Society of Separationists, Inc. v. Whitehead, 870 P.2d 916 (Utah 1993) (Utah Supreme Court upheld Salt Lake City Council’s practice of permitting prayer during opening portion of council meetings).

. During all relevant time periods, Defendant William Boston was Principal of West High School; Defendants Gene Bonella and Teresa Piele were assistant principals; Defendant Dolores Riley was the School District's Minority Liaison Coordinator; Defendant Darline Robles was the School District Superintendent beginning in January 1995; Defendant Dale Manning was the School District Interim Acting Superintendent from August 1994 — January 1995; and Defendant Mary Jo Rasmussen was the Salt Lake City School Board President.

. Ms. Bauchman also requested an injunction pending appeal, which we granted, thereby enjoining the singing of two songs, "The Lord Bless You and Keep You” and "Friends,” by the Choir at West High School’s 1995 graduation ceremonies. When a group of students and members of the audience sang "Friends” notwithstanding *547 this court’s injunction, Ms. Bauchman petitioned for an adjudication of contempt. We partially remanded the matter to the district court judge to act as special master to conduct whatever proceedings were necessary to resolve the allegations of the contempt petition. After careful review of the district court’s report, findings of fact and recommendation, we denied Ms. Bauch-man’s contempt petition.

. As Ms. Bauchman does not appeal the dismissal of her Religious Freedom and Restoration Act claim, nor, apparently, the dismissal of .her *548 claims against the High School itself, we do not further address those claims.

. Relying on Anderson v. Green, 513 U.S. 557, 115 S.Ct. 1059, 130 L.Ed.2d 1050 (1995) (per curiam), Ms. Bauchman requests that we remand her claims for declaratory and injunctive relief to the district court with instructions to vacate all parts of the district court’s decisions that concerned those claims. While we agree with Ms. Bauchman the circumstances in this case involuntarily mooted her declaratory and injunctive claims, this case differs from Anderson in one important respect — in Anderson the Supreme Court dismissed the entire appeal, not just certain claims. Id. at 560, 115 S.Ct. at 1060-61. Since we proceed to decide the substantive merits of Ms. Bauchman's § 1983 claim, we decline to parse out and vacate certain portions of the district court’s decision which, in fact, may be inseparable from the substantive issues we address. However, by dismissing Ms. Bauchman's appeal as to her claims for injunctive and declaratory relief we do not intend to prohibit the parties from making any appropriate requests to the district court regarding its final disposition of those claims.

. We acknowledge this court has never settled on a standard for review of "constitutional facts" such as a district court's findings concerning First Amendment violations. Gaylor v. United States, 74 F.3d 214, 216 (10th Cir.), cert. denied, — U.S.-, 116 S.Ct. 1830, 134 L.Ed.2d 934 (1996); Robinson v. City of Edmond, 68 F.3d 1226, 1230 n. 7 (10th Cir.1995), cert. denied, — U.S. -, 116 S.Ct. 1702, 134 L.Ed.2d 801. Nevertheless, we decline an opportunity to do so in this case as the facts are insufficient to support Ms. Bauchman's constitutional claims under either a de novo or a clearly erroneous standard.

. The Court also has examined the coercive effect a school-sponsored religious activity may have on students. See Lee v. Weisman, 505 U.S. 577, 592, 112 S.Ct. 2649, 2658, 120 L.Ed.2d 467 (1992): In Lee, the Court reaffirmed its longstanding recognition "that prayer exercises in public schools carry a particular risk of indirect coercion," and rejected the government’s argument that providing a student with the option of not attending her high school graduation excused any inducement or coercion inherent in the ceremony itself. Id. at 592-99, 112 S.Ct. at 2658-62. According to the Court, it is overly formalistic to suggest a teenage student has a real choice not to attend her graduation — "one of life's most significant occasions.” Id. at 595, 112 S.Ct. at 2659.
For reasons discussed more thoroughly below, we do not believe the singing of religious songs alone constitutes prayer. Nor do we consider the singing of religious songs in religious venues to constitute prayer without additional facts showing that such activity took place in a worshipful context. The facts as alleged by Ms. Bauchman simply do not identify a religious activity analogous to that addressed in Lee or other school prayer cases. Accordingly, we conclude a coercion analysis is inapplicable to the facts at hand.

. This is not a case in which we can evaluate the legitimacy and sincerity of a legislative statement regarding a statute's secular purpose, as the Supreme Court has so often done in its Establishment Clause cases. Moreover, since Ms. Bauch-man's Complaint was dismissed pursuant to Fed. R.Civ.P. 12(b)(6), and our review therefore is limited to the allegations in her complaint, we cannot evaluate direct statements from Mr. Torgerson or the other defendants regarding the purpose for selecting religious songs and religious venues as part of the broader vocal music curriculum at West High School. We do not believe, however, that the procedural posture of this case should prevent us from acknowledging prevalent, archetypical secular purposes for defendants’ conduct. See Jaffree, 472 U.S. at 75, 105 S.Ct. at 2499 (O'Connor, J., concurring) (reasoning even if there is no express secular purpose, a statute "should be held to have an improper purpose only if it is beyond purview that endorsement of religion or a religious belief was and is the law's reason for existence' ”) (quoting Epperson v. Arkansas, 393 U.S. 97, 108, 89 S.Ct. 266, 272, 21 L.Ed.2d 228 (1968)). If we were so limited, Establishment Clause claims would be immune from attack under Fed. R.Civ.P. Rule 12(b)(6).

. Accordingly, we decline Ms. Bauchman’s invitation to more closely evaluate the number and quality of religious songs selected for the Choir. The Constitution does not contemplate nor require judicial micro-management of the religious content of public education. Indeed, it would be entirely impractical to attempt such an endeavor.

. We take judicial notice of the fact that Ms. Bauchman’s opportunity to waive participation in the Christmas concerts or any other Choir activity was protected by Utah's "Recognizing Constitutional Freedoms in Public School Act,” Utah Code Ann. § 53A-13-101.2, and the State Office of Education's regulations implementing that Act, Utah Admin. Code R. 277-105-5. •

. We have fully addressed the issues Ms. Bauchman raised in protest of the district court’s denial of her motion for reconsideration in our affir-mance of the district court's order dismissing Ms. Bauchman’s complaint. The remainder of our analysis therefore focuses on Ms. Bauch-man’s motion to amend her complaint.

. It follows that absent sufficient factual allegations to support an Establishment Clause claim, the remaining allegations in Ms. Bauchman’s amended complaint concerning the identity, role and liability of individual defendants are of no import.