Donald L. JANDRO, Plaintiff,

v.

Ronald E. FOSTER, Defendant.

No. Civ. A. 98–S–1863.

United States District Court, D. Colorado.

June 7, 1999.

Todd J. McNamara, Todd J. McNamara, P.C., Denver, CO, for Plaintiff.

David Allen Burlage, Patrick Terrence O'Rourke, Montgomery, Little and McGrew, Englewood, CO, for Defendant.

## ORDER

SPARR, District Judge.

THIS MATTER comes before the court on the Recommendation of United States Magistrate Judge Coan that: (1) Defendant's Motion to Dismiss (filed October 8, 1998) and Defendant's Renewed Motion to Dismiss (filed November 30, 1998) be granted in part and denied in part; and (2) that the December 8, 1998 Minute Order staying litigation be lifted and that this case be set for a scheduling conference.

The Recommendation was filed on May 4, 1999 and served on the parties by mail on May 4, 1999. The parties have failed to file specific written objections to the Recommendation and more than 10 days has passed since the date of issuance and service of the Recommendation. Accordingly, the parties are barred from a *de novo* determination of the proposed findings and recommendations. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *United States v. One Parcel of Real Property, Known as 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057 (10th Cir.1996).

Nevertheless, the court has *sua sponte* conducted a *de novo* review of the proposed findings and recommendations and determines that the Recommendation is appropriate.

Accordingly, IT IS ORDERED:

1. The Recommendation of United States Magistrate Judge Coan is ACCEPTED.

2. Defendant's Motion to Dismiss (filed October 8, 1998) and Defendant's Renewed Motion to Dismiss (filed November 30, 1998) are GRANTED in part and DENIED in part.

3. The Second Claim for Relief in Plaintiff's First Amended Complaint is hereby DISMISSED. This civil action shall proceed as to the First and Third Claims for Relief in Plaintiff's First Amended Complaint.

4. The stay ordered on December 8, 1998 is hereby lifted. This civil action shall be referred to the Magistrate Judge for scheduling.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

COAN, United States Magistrate Judge.

This matter is before the court on Defendant's Motion to Dismiss [filed October 8, 1998] and Defendant's Renewed Motion to Dismiss [filed November 30, 1998]. A Supplemental Order of Reference under 28 U.S.C. § 636(b)(1)(A) and (B) referred this case to the undersigned magistrate judge on December 30, 1998 to issue a recommendation on defendant's motion. The motions to dismiss have been fully briefed. The court heard oral argument on April 30, 1999.

### I. Background

Plaintiff asserts a claim against defendant Ronald E. Foster under 42 U.S.C. § 1983 for First Amendment retaliatory discharge, and pendent state law claims of intentional infliction of emotional distress (outrageous conduct) and intentional interference with prospective business advantage. Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, costs, and attorney's fees under 42 U.S.C. § 1988.

Plaintiff makes the following allegations. Defendant Foster is the District Attorney for the Fifteenth Judicial District, State of Colorado.[1] (First Amended Complaint, ¶ 4) Defendant hired plaintiff as an administrator/investigator for the Office of the District Attorney in January 1993. (*Id.* at ¶ 7) Plaintiff was eventually promoted to the position of chief investigator. (*Id.*)

Plaintiff alleges that Foster sexually assaulted plaintiff's wife in September 1995. (*Id.* at ¶ 10) Plaintiff did not learn about the alleged assault until the summer of 1997. (*Id.* at ¶ 11) After plaintiff and his wife discovered that any action against defendant based on the sexual assault was legally time-barred, plaintiff conducted an informal investigation of female employees in the District Attorney's office to determine whether they had been subject to sexual assaults or harassment by Foster. (*Id.* at ¶ 11) Plaintiff alleges that Foster was "angry and resentful" upon learning of plaintiff's inquiries. (*Id.*)

Plaintiff alleges that during the summer of 1997, tensions arose between defendant and law enforcement personnel in Kiowa County because Foster believed that Kiowa County was not paying its share of the department budget for defendant's salary. (*Id.*) Fred Cook, police chief for the city of Eads, Kiowa County, expressed his concern to plaintiff and others about defendant's reluctance to file cases in Kiowa County and about "Foster's excessive drinking habits." (*Id.* at ¶ 12) Cook told plaintiff that Kiowa County's "no tolerance" drunk driving policy would be applied to defendant in the same manner as it was applied to other citizens. (*Id.*) Plaintiff told Foster about his and Cook's concerns regarding defendant's "excessive drinking," especially defendant's alleged drinking on the job and while driving. (*Id.* at ¶¶ 12, 40.b) Defendant responded by suggesting that Cook should be "let go." (*Id.*) In September 1997, defendant began a campaign to remove Mr. Cook from the position of chief of police. (*Id.*) Plaintiff alleges that Foster used the power of his office to coerce support for Cook's termination (*Id.* at ¶ 37.c), and that defendant directed plaintiff to participate in defendant's "acts of misconduct", but plaintiff refused (*id.* at ¶ 38). On September 30, 1997, Cook asked plaintiff to appear at an October 2, 1997 Eads City Council meeting as a character witness in support of Cook. (*Id.* at ¶ 15) The purpose of the meeting was to discuss Cook's continued employment as Eads police chief. (*Id.*) When plaintiff advised defendant of Cook's request the following day, Foster instructed plaintiff that he was not to attend the meeting. (*Id.* at ¶ 16) Foster told plaintiff that Cook should be "let go" for speaking to a city council member about defendant's drinking problem. (*Id.*) Plaintiff nevertheless advised defendant that he intended to attend the Eads City Council meeting as a concerned citizen and as Cook's friend, but not as a representative of the District Attorney's office. (*Id.*) Plaintiff attended the October 2, 1997 Eads City Council meeting and spoke in support of Cook's continued retention as chief of police. (*Id.* at ¶ 17)

On October 9, 1997, while defendant was away from the office at a conference, the assistant district attorney, Larry Porter, advised plaintiff that he could either resign from his position or be placed on a leave of absence until October 17, 1997, at which time he could be terminated for poor job performance. (*Id.* at ¶ 20) Believing that his termination was unjustified, plaintiff chose to be placed on a leave of absence. (*Id.* at ¶ 21) On October 14, 1997, plaintiff's attorney received a letter from Foster outlining plaintiff's supposed "job deficiencies" to which plaintiff's attorney promptly responded. (*Id.* at ¶ 22–23) On October 17, 1997, defendant advised plaintiff that his employment was terminated effective that day. (*Id.* at ¶ 24) Plaintiff alleges that

---

1. The court takes judicial notice of the fact that the Fifteenth Judicial District includes Bent, Otero, Crowley, Cheyenne, Kiowa, Prowers, Baca, and Las Animas counties. Fed.R.Evid. 201.

prior to October 1997, he had never received a written reprimand or been informed that his job performance was unsatisfactory in any way. (*Id.* at ¶¶ 8–9)

## II Standard of Review

Defendant moves to dismiss plaintiff's First Amended Complaint under Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, the court must accept as true well-pleaded factual allegations. *Roman v. Cessna Aircraft Co.,* 55 F.3d 542, 543 (10th Cir.1995). All reasonable inferences must be resolved in plaintiff's favor. *Bauchman v. West High School,* 132 F.3d 542, 550 (10th Cir. 1997) (internal citations omitted). Dismissal is appropriate only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see, also, Ramirez v. Oklahoma Dep't of Mental Health,* 41 F.3d 584, 586 (10th Cir.1994).

## III Legal Analysis

A. *§ 1983 First Amendment Retaliatory Discharge*

Defendant asserts the defense of qualified immunity in response to plaintiff's claim under 42 U.S.C. § 1983 that he was discharged in retaliation for exercising his First Amendment right to freedom of speech.[2]

■■■■ A district attorney performing administrative functions may be entitled to qualified immunity against constitutional claims filed against him in his individual capacity. *Roberts v. Kling,* 104 F.3d 316, 319 (10th Cir.1997). Qualified immunity shields public officials from civil damages liability if their actions did not " 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pino v. Higgs,* 75 F.3d 1461, 1467 (10th Cir.1996) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). When a public official raises the defense of qualified immunity, the court first determines whether the conduct complained of constitutes a violation of a constitutional right; if so, the court then addresses whether that right was clearly established at the relevant time. *Gehl v. Koby,* 63 F.3d 1528, 1533 (10th Cir.1995) (citing *Siegert v. Gilley,* 500 U.S. 226, 232–33, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). Plaintiff must therefore "present facts which if true would constitute a violation of a clearly established law." *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 646 (10th Cir.1988) (quoting *Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir.1987) (internal citation omitted)). In the context of a Rule 12(b)(6) motion, the court applies a heightened pleading standard, requiring plaintiff to plead "specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law." *Breidenbach v. Bolish,* 126 F.3d 1288, 1293 (10th Cir.1997). If the plaintiff cannot meet his burden, the defendant is entitled to qualified immunity and the constitutional claim must be dismissed.

■■■■ Plaintiff claims that defendant discharged him in retaliation for plaintiff's exercise of his right of freedom of speech protected by the First Amendment. "It is clearly established that a State may not discharge an employee on a basis that infringes upon that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson,* 483 U.S.

---

**2.** Plaintiff's § 1983 claim and his pendent state law claims are brought against defendant solely in defendant's individual capacity. Plaintiff has withdrawn his claims against defendant in his official capacity as District Attorney for the Fifteenth Judicial District. Plaintiff's claims against the Office of the District Attorney have been dismissed pursuant to a stipulation by the parties.

378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *see, also, Childers v. Independent School Dist. No. 1 of Bryan County,* 676 F.2d 1338, 1342 (10th Cir.1982). To state a claim for unlawful retaliatory discharge based on the exercise of the constitutionally-protected right to freedom of speech, a plaintiff must allege facts to show that (1) the speech is protected under the First Amendment and (2) the speech was a substantial or motivating factor in the employer's decision to terminate plaintiff's employment. *Conaway v. Smith,* 853 F.2d 789, 795 (10th Cir.1988) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). If the plaintiff makes the requisite showing, the burden shifts to the employer to demonstrate that it would have taken the same action against the employee in the absence of the protected speech. *Gardetto v. Mason,* 100 F.3d 803, 811 (10th Cir.1996). The first prong of the inquiry may be determined as a matter of law, while the second prong raises factual issues. *Id.*

A public employee's speech warrants constitutional protection if the speech relates to matters of public concern, *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and, if the interests of the public employee in commenting on matters of public concern outweigh the interest of the government employer "in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). If the employee's speech does not touch on a matter of public concern, the court need not engage in the *Pickering* balancing analysis. *Connick,* 461 U.S. at 146, 103 S.Ct. 1684.

Speech touches on a matter of public concern when it can be "fairly considered as relating to any matter of political, social or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. Expression that is calculated to disclose inefficiency, impropriety or other malfeasance on the part of government officials generally constitutes a matter of public concern, in contrast to speech that pertains only to personal disputes and grievances which is not subject to First Amendment protection. *Koch v. Hutchinson,* 847 F.2d 1436, 1445–46 (10th Cir. 1988); *Erickson v. Board of County Commissioners,* 801 F.Supp. 414, 421 (D.Colo. 1992).

In determining whether speech is a matter of public concern, the court must consider the content, form and context of a given statement in light of the record as a whole. *Connick,* 461 U.S. at 147–148, 103 S.Ct. 1684. An important factor to be weighed in considering the form and context is whether the actor speaks as a citizen or as an employee. *Schalk v. Gallemore,* 906 F.2d 491, 495 (10th Cir.1990). An employee speaks as a citizen if his speech is based on the same motivation that would compel the public to speak. *Gardetto,* 100 F.3d at 812. The fact that the speech at issue occurred during the course of an employee's official duties may weigh against a conclusion that the statements involve matters of public concern. *Considine v. Board of County Commissioners,* 910 F.2d 695, 700 (10th Cir.1990). Further, although the subject matter of the communication may generally be of public interest, the focus of the public concern inquiry is upon what is actually said. *Connick,* 461 U.S. at 148, n. 8, 103 S.Ct. 1684; *Wren v. Spurlock,* 798 F.2d 1313, 1318, n. 1 (10th Cir.1986).

Plaintiff alleges that defendant terminated his employment because of the following three incidents of protected expression: plaintiff questioned female employees in the District Attorney's office as to whether they had ever been sexually assaulted or harassed by the defendant; plaintiff voiced concerns to Foster about defendant's drinking; and, plaintiff spoke at an Eads City Council meeting in support of the continued employment of Chief of Police Cook, a person whom

Foster wanted fired because Cook had told City Council members and others that defendant had a drinking problem. The court will address each incident to determine if the speech addressed a matter of public concern.

■ First, plaintiff alleges that after learning that he could not successfully sue defendant for sexually assaulting his wife, he informally investigated whether any of the female employees in the District Attorney's office had been sexually assaulted or harassed by the defendant. It is a close question whether plaintiff's informal poll of female employees touched on a matter of public concern. Unlike the facts presented in other cases where the Tenth Circuit Court of Appeals found that speech pertaining to sexual harassment of employees by a government official touched on a matter of public concern, plaintiff does not allege that he requested that outside officials conduct an investigation of defendant for sexual harassment or assault of female employees, or that he made allegations against Foster outside of the office environment. *See Wren*, 798 F.2d at 1317–1318; *Wulf v. City of Wichita*, 883 F.2d 842, 860 (10th Cir.1989); *see, also, David v. City and County of Denver*, 101 F.3d 1344, 1357 (10th Cir.1996) (noting that sexual harassment of an employee by a government employer is not inherently a matter of public concern). On the other hand, this case is not one in which the plaintiff spoke out about the conditions of his own employment, expression which would not constitute a matter of public concern. *See David*, 101 F.3d at 1356. The allegations of plaintiff's complaint create an inference that plaintiff was motivated, at least in part, by a desire to vindicate his wife's personal interests; however, an inference can be drawn that plaintiff was also motivated by a concern similar to that shared by other citizens that a District Attorney who is charged with enforcing the laws of the Judicial District breaches the public trust if he violates those same laws with impunity during working hours. Thus,

plaintiff's speech had a broader public purpose to expose a highly visible public official's lack of integrity and to bring to light potential wrongdoing. *See Gardetto*, 100 F.3d at 812–813. Because of defendant's status as the District Attorney, the court finds that plaintiff's informal investigation into whether Foster had sexually assaulted female employees at the District Attorney's office touched on a matter of public concern.

■ When plaintiff spoke out at the Eads City Council meeting to voice his support for the continued retention of Cook as Eads police chief, his expression touched on a matter of public concern. Plaintiff spoke at a public meeting, during non working hours, as a concerned citizen, to inform the public that Cook was satisfactorily performing his duties as Eads police chief. The qualifications of a highly visible public official which impact the political or social life of a community are matters of public concern. *Gardetto*, 100 F.3d at 812.

■ Finally, the court finds that plaintiff's private communications to defendant expressing plaintiff's concerns about defendant's alleged drinking on the job also touch upon a matter of public concern. The ability of the district attorney to discharge his investigative and prosecutorial duties in a competent manner, without being impaired by alcohol, is a matter of concern to the community. The fact that an employee chooses a private, rather than a public forum, to express his concerns does not remove the speech from First Amendment protection. *Dill v. City of Edmond, Oklahoma*, 155 F.3d 1193, 1202 (10th Cir.1998); *Conaway*, 853 F.2d at 797 (internal citations omitted). In addition, because of Foster's status as the District Attorney, the court also finds that plaintiff's expression of his own and Cook's concerns to defendant regarding Foster's alleged off-duty "drunk driving" touch upon a matter of public concern. A district attorney who does not himself obey "drunk driving" laws that he is charged

with prosecuting is committing malfeasance in executing the oath of his office, a matter of concern to the public.

■ Having determined that all three of plaintiff's incidents of expression touched on matters of public concern, the court next determines, under *Pickering,* whether plaintiff's interest in exercising his right to freedom of speech is outweighed by the government's interest in promoting the efficiency of its operations. A review of plaintiff's amended complaint in a light most favorable to the plaintiff reveals that plaintiff's speech was not disruptive to the efficient operations of the District Attorney's office. *See Dill,* 155 F.3d at 1204. Thus, the *Pickering* balancing analysis could tip in plaintiff's favor. Accordingly, the court finds that plaintiff's pleading alleges sufficient facts to support an inference that the incidents of expression are protected by the First Amendment.

■ Plaintiff must also allege facts to show that his protected speech was a substantial or motivating factor in the decision to terminate his employment. *Conaway,* 853 F.2d at 795. Plaintiff was terminated after he voiced his concerns to Foster regarding his alleged drinking problem, and after plaintiff spoke at the Eads City Council meeting in support of Cook after defendant expressly forbade him to do so. Plaintiff alleges that prior to those incidents, he had not been advised that his work performance was unsatisfactory in any way. The allegations of plaintiff's complaint are sufficient to create an inference that plaintiff was terminated in retaliation for his protected speech.[3]

■ The court finds that plaintiff has alleged facts to support a § 1983 claim that he was discharged in retaliation for exercising his First Amendment rights. Further, an employee's right to be free from retaliatory discharge based on his exercise of a constitutionally protected interest in freedom of speech has been clearly established for more than two decades. *See Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Mt. Healthy City School Dist. Bd. of Educ.,* 429 U.S. at 283–84, 97 S.Ct. 568. Accordingly, defendant is not entitled to qualified immunity on plaintiff's § 1983 claim at this stage of the proceedings.

B. *Intentional Infliction of Emotional Distress (Outrageous Conduct) Claim*

Defendant argues that plaintiff's allegations of outrageous conduct (intentional infliction of emotional distress) do not state a cause of action as a matter of law. Defendant also contends that plaintiff's claim is not actionable because defendant acted within his legal rights in terminating plaintiff's at-will employment, and, that plaintiff's claim is barred by COLO.REV.STAT. § 24–34–402.5(2)(a) which defendant argues provides the sole remedy under state law for an employee's claim that he was wrongfully discharged for engaging in lawful activity off the premises of the employer during nonworking hours.

■ Colorado recognizes the tort of outrageous conduct. *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 756 (1970). In *Rugg,* the Colorado Supreme Court adopted the Restatement (Second) of Torts § 46, comment d (1965) which provides that liability may be found only "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rugg,* 476 P.2d at 756. Although the jury will ultimately determine whether the conduct in question is outrageous, it is for the court to decide, in the first instance,

---

**3.** The court does not reach the question of whether defendant would have taken the same action against plaintiff in the absence of the protected speech because that defense is not relevant in deciding a Rule 12(b)(6) motion which must be determined from the four corners of plaintiff's complaint.

whether the issue should be submitted to the jury based on whether reasonable persons could differ on the conduct being outrageous. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1350 (Colo.1988). Discharge from employment, without more, does not constitute outrageous conduct. *Therrien v. United Air Lines, Inc.,* 670 F.Supp. 1517, 1524 (D.Colo.1987). It is the manner of the discharge and the employer's conduct which is critical to a finding of outrageous conduct. *Grandchamp v. United Air Lines, Inc.,* 854 F.2d 381, 385 (10th Cir.1988). Allegations by an employee that he was dismissed summarily or without cause are insufficient to state an outrageous conduct claim. *Therrien,* 670 F.Supp. at 1524.

 In support of his outrageous conduct claim, plaintiff alleges the following conduct by defendant which was directed at the plaintiff:[4] Defendant solicited, and at times directed, plaintiff to participate in a campaign to remove Eads police chief Cook from his position based upon Cook's expressed concern to plaintiff and other members of the public about defendant's alleged excessive drinking. Defendant terminated plaintiff's employment, without cause, after plaintiff refused to participate in the conspiracy to remove Cook and after plaintiff disobeyed defendant's order not to speak on Cook's behalf at the Eads City Council meeting. The decision to terminate plaintiff's employment was also based, in part, on concerns plaintiff expressed to Foster about his alleged excessive drinking and on plaintiff's actions in conducting an investigation within the District Attorney's office about whether defendant had sexually assaulted or harassed female employees. Defendant terminated plaintiff's employment by giving him the option of resigning or of being discharged. Plaintiff asserts that defendant's conduct constitutes a "ma-

licious pattern of harassment, intimidation and undue influence on plaintiff designed to inflict emotional distress and to damage plaintiff professionally." Amended Complaint, ¶ 42.

The allegations in support of plaintiff's outrageous conduct claim are essentially the same as those asserted in support of his § 1983 claim for retaliatory discharge in violation of protected First Amendment rights. Federal law provides plaintiff a remedy and he does not allege any facts to show that the manner of his termination was particularly abusive. *See Grandchamp,* 854 F.2d at 384. Although plaintiff's allegations support an inference that his discharge was unfair and state a cause of action against defendant under federal law, the allegations would not cause an average member of the community to exclaim "Outrageous!" Accordingly, the court finds as a matter of law that plaintiff has failed to state a claim for outrageous conduct.[5]

### C. *Intentional Interference with Prospective Business Advantage*

Defendant argues that plaintiff's claim for intentional interference with prospective business advantage fails because defendant, as the District Attorney for the Fifteenth Judicial District, is not a third person with respect to plaintiff's employment relationship with the Office of the District Attorney. Defendant also contends that to the extent plaintiff seeks relief for defendant's alleged interference with plaintiff's prospective, as opposed to continuing contractual relations, plaintiff has failed to state a claim for relief.

 Colorado recognizes the tort of tortious interference with prospective business advantage. Dolton v. *Capitol Fed.*

---

4. Plaintiff also complains of conduct which was directed at plaintiff's wife or Eads police chief Cook. The court notes, however, that defendant's conduct toward others cannot form the basis of plaintiff's outrageous conduct claim.

5. Because the court finds that plaintiff has failed to state an outrageous conduct claim, it need not address the other arguments advanced by defendant in support of his motion to dismiss that claim.

*Sav. & Loan Ass'n,* 642 P.2d 21, 23 (Colo. App.1981). Colorado has adopted the Restatement (Second) of Torts § 766B (1979) which provides:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from the loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

*Dolton,* 642 P.2d at 23; *see, also, Behunin v. Dow Chemical Co.,* 650 F.Supp. 1387, 1393 (D.Colo.1986). In this case, plaintiff complains that defendant interfered with his continuing employment relationship with the Office of the District Attorney for the Fifteenth Judicial District. Plaintiff's status as an at-will employee does not preclude this claim because even a contract terminable at will is entitled to some protection from tortious interference. *Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.,* 690 P.2d 207 (Colo.1984); *see, also, Zappa v. Seiver,* 706 P.2d 440, 442 (Colo.App.1985) (citing Restatement (Second) of Torts § 766, comment g (1979)) ("Until terminated, an at will contract is valid and subsisting, and a stranger to the contract has no right to interfere improperly with it.")

■ Defendant argues that as the District Attorney for the Fifteenth Judicial District, he is the alter ego of the Office of the District Attorney and therefore cannot be held liable for interfering in a contractual relationship to which he is a party. In *Trimble v. City and County of Denver,* 697 P.2d 716, 726 (Colo.1985), the defendant corporate agent argued that he was not a third party with respect to the employment relationship between the plaintiff and the corporation. After rejecting outright the notion that the agent was the alter ego of the corporation, the Colorado Supreme

Court held that an officer, director or other agent of a corporation may be held liable for tortiously interfering with a contractual relationship between an employee and the corporation if the officer, agent or third party was motivated solely by a desire to harm one of the contracting parties or to interfere with the contractual relationship. *Trimble,* 697 P.2d at 726; *Zappa v. Seiver,* 706 P.2d 440, 442 (Colo.App. 1985). Thus, defendant, as the District Attorney, is an agent of the Office of the District Attorney because the District Attorney's Office can act only through the persons who represent that office. Defendant's relationship to the Office of the District Attorney is similar to that of a director's relationship to a corporation. The court finds that defendant is a third person with respect to the employment relationship between plaintiff and the Office of the District Attorney.

■ Plaintiff alleges that defendant interfered with plaintiff's continuing employment relationship with the District Attorney's office by terminating plaintiff's employment, thereby denying plaintiff employment benefits and advancement opportunities with the District Attorney's office, and by giving plaintiff an unsubstantiated negative performance review and spreading rumors about plaintiff's employment "deficiencies." Amended Complaint, ¶ 47. Plaintiff alleges that defendant's conduct was intentional and improper, in that it was done in retaliation for plaintiff's exercise of protected constitutional rights and in retaliation for plaintiff's objections to defendant's illegal conduct. *Id.* at ¶ 48. Whether an actor's conduct is improper is a factual inquiry largely dependant upon the actor's motives. *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 500 (1995) (citing factors set forth in Restatement (Second) of Torts § 767 (1979)). The court finds that plaintiff has alleged sufficient facts to create an inference that defendant's actions in interfering with plaintiff's continued employment relationship with the Office of the District Attorney

was motivated solely by a desire to cause plaintiff harm. Plaintiff's allegations are sufficient to withstand a motion to dismiss.[6]

## IV Recommendation

For the reasons set forth above, it is

RECOMMENDED that Defendant's Motion to Dismiss [filed October 8, 1998] and Defendant's Renewed Motion to Dismiss [filed November 30, 1998] be GRANTED IN PART AND DENIED IN PART. It is

RECOMMENDED that defendant's motion and renewed motion to dismiss plaintiff's § 1983 claim for retaliatory discharge based on plaintiff's exercise of his right of freedom of speech protected by the First Amendment of the United States Constitution be DENIED. It is

RECOMMENDED that defendant's motion and renewed motion to dismiss plaintiff's outrageous conduct claim be GRANTED. It is

RECOMMENDED that defendant's renewed motion to dismiss plaintiff's claim for intentional interference with prospective business advantage be DENIED. It is further

RECOMMENDED that the court's December 8, 1998 Minute Order staying litigation pending resolution of the motions to dismiss be lifted and that this case be set for a scheduling conference.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation as provided by Rules of court. The district court judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made. The district court judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

May 4, 1999.

---

**6.** To the extent plaintiff asserts that defendant interfered with plaintiff's prospective contractual relations with persons or entities other than the Office of the District Attorney, the court finds that plaintiff has failed to allege sufficient facts to support such a claim.